**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. | ) | |
| HERMAN NITZ, JR.  (N-08438), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11 C 1904 |
| | ) | |
| KEITH ANGLIN, WARDEN | ) | Judge Rebecca R. Pallmeyer |
| DANVILLE CORRECTIONAL CENTER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Herman L. Nitz Jr. was convicted of theft from a place of worship on November 5, 2008, and, because of his prior criminal history, was sentenced to twelve years imprisonment as a Class X offender.   Petitioner unsuccessfully challenged his conviction in state court and ultimately filed this petition for a writ of habeas corpus, alleging that he is entitled to relief on four grounds: (1) the prosecutor failed to turn over exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) his trial and appellate counsel were ineffective; (3) bail imposed was excessive; and (4) his sentence violated 725 ILCS 5/111-3(c).   Respondent Keith Anglin argues that Petitioner has failed to exhaust state court remedies and procedurally defaulted all of his claims, and that the challenge to excessive bail and to the sentence are not cognizable on federal habeas.   Petitioner complains that the trial court and appellate counsel prevented him from raising the issues presented here in his state court proceedings, and, in his Reply, alleges three additional grounds for relief: challenges to (5) the imposition of mandatory supervised release ("MSR"); (6) diminishment of his "good time" credits; and (7) inadequate medical care within the Department of Corrections.

None of the seven grounds identified by Petitioner clear the stringent procedural and jurisdictional hurdles that would enable the court to grant relief.   The court concludes that Petitioner's *Brady* and ineffective assistance claims are unexhausted and procedurally

defaulted; the challenge to excessive bail is moot; and the purported illegality of his sentence is a non-cognizable state-law issue, and, if it raises a constitutional claim at all, is unexhausted and procedurally defaulted. Even if the claims raised for the first time in Petitioner's reply were properly before the court, none support federal habeas relief. For reasons discussed more fully below, Petitioner's habeas petition [1] is denied, and the court declines to issue a certificate of appealability.

## **BACKGROUND**

Following a trial in the 18th Judicial Circuit Court of DuPage County, a jury found Petitioner guilty of theft of jewelry worth approximately $600 from St. Mark's Episcopal Church in Glen Ellyn, Illinois. (Rule 23 Order in *People v. Nitz*, No. 2-09-0178, Ex. A to Answer [41], hereinafter "Appellate Ct. Order," at 1.) The initial charge was theft, a Class 3 offense, but the State's Attorney enhanced that charge, and the grand jury indicted Petitioner on the Class 2 offense of theft from a place of worship.[1] (Recons. Hr'g Tr., Feb. 11, 2009, Attach. 1 (Part 2) to Habeas Pet. at 14 [1], at 9:11-24, 10:1-2; Indictment, *People v. Nitz*, No. 07-CF-2821-01 (18th Cir.), Attach. 5 to Habeas Pet. [5] at 6.) The trial jury considered instructions specific to the charge of theft from a place of worship. (Trial Tr., Nov. 5, 2008, Attach. 1 (Part 2) to Habeas Pet. [1] at 153 & Attach. 2 (Part 3) to Habeas Pet. at 1 [1], at 230:23-24, 231:1-18.)

At trial, the prosecution presented evidence that on September 23, 2007, a glass display case that had held the jewelry at the church had been forced open, and Petitioner's fingerprints were found on the inside of the display case door. (Appellate Ct. Order at 2.) Sergeant Jean Harvey, a Glen Ellyn police officer, testified that Petitioner admitted to stealing the jewelry by forcing the display case door open. (Trial Tr. at 107:13-14; 110:4-24; 111:1-20.) She also

---

[1]    720 ILCS 5/16-1(b)(4.1) provides that "[t]heft of property from the person not exceeding $500 in value, or theft of property exceeding $500 and not exceeding $10,000 in value, is a Class 2 felony if the theft was committed in a school or place of worship or if the theft was of governmental property." *Id.*

testified that Petitioner told her that he had subsequently exchanged the jewelry for drugs. (*Id.* 111:21-24; 112:1-8.) Sergeant Harvey admitted that, after writing her report in January 2008 regarding her interview with Petitioner, she had "gotten rid of" the notes that she had taken during the interview. (*Id.* 141:5-12.) Petitioner's trial counsel argued that destruction of the notes violated the court's discovery order, issued around November 2007, and the court agreed, informing the jury that the notes were destroyed "[a]pparently in violation of [the court's] order . . . ." (*Id.* 141:13-24; 142:1-5; 146:6-16.)

Petitioner testified as well. He explained that he had attended St. Mark's Church for "a long time," and on September 16, 2007 had visited the church, found greeting cards on top of the display case, and "picked [them] up and looked at [them] . . . and . . . put [them] away." (Trial Tr. at 154:22-23; 157:1-12.) On cross examination, Petitioner testified that "there was a couple [cards] inside" the display case, as well, and therefore, he "may have" gone inside the case because it was "wide open" at the time. (*Id.* 165:2-13.) Petitioner denied that he stole the jewelry, and further denied that he had confessed doing so. (*Id.* 154:12-15; 161:6-15.) The jury was instructed on the charge of theft from a place of worship and found Petitioner guilty of that charge. (*Id.* at 246:9-10.)

At sentencing, Petitioner argued that the change in charge from a Class 3 offense to a Class 2 offense was a wrongful "double enhancement" resulting in his sentencing as a Class X offender. (Sentencing Tr., Jan. 26, 2009, Attach. (Part 1) to Habeas Pet. at 149 & Attach. 1 (Part 2) to Habeas Pet. at 1 [1], at 5:23-6:7.) In response, the court explained that the change reflected the specific charge of theft from a place of worship and that it was Petitioner's "history of offenses," including approximately six other Class 2 felony convictions, that rendered him subject to a sentence as a Class X offender.[2] (Sentencing Tr. at 6:4-24, 7:1-7, 26:2-5.) The

---

[2] 730 ILCS 5/5-4.5-95(b) (formerly 730 ILCS 5/5-5-3(c)(8)) provides that a "defendant shall be sentenced as a Class X offender" "[w]hen a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state
(continued…)

court imposed a sentence of twelve years imprisonment followed by three years mandatory supervised release ("MSR"). (Sentencing Tr. at 27:15-17, 30:23-24, 31:1-4.) Petitioner's motion for reconsideration of sentence was denied on February 11, 2009 (Recons. Hr'g Tr. at 13:14), and he filed a timely notice of appeal on February 18, 2009. (Def.-Appellant's Br., Ex. B to Resp't's Answer [42], hereinafter "Pet'r's Appellate Br.," at 1.)

## A. Direct Appeal

In his opening brief on appeal, Petitioner argued only that his sentence was excessive. (Pet'r's Appellate Br. at 2-3.) Petitioner also wanted to raise additional issues related to the fairness of his trial and the effectiveness of trial counsel (Jeffrey York), but his appellate attorney Jack Hildebrand disagreed, and presented only the excessive sentence claim. (Letter from Hildebrand to Nitz of 3/30/10, Ex. E to Resp't's Mot. to Dismiss at 87 [11] at 4.) After the appeal was filed and the state had responded, Petitioner terminated his appointed counsel and proceeded *pro se*. (Appellate Ct. Order at 6 n.1.) On May 20, 2010, Nitz filed an additional submission *pro se*, which the appellate court characterized as a "reply brief" (*id.*), in which he requested that the court order a re-briefing and argument on appeal to address ten additional issues, five of which are similar to those raised in this habeas petition: "[i]neffective assistance of trial counsel" (Def.-Appellant's *Pro Se* Br., Ex. D to Answer, hereinafter "Pet'r's *Pro Se* Reply Br.," at 22-23), "[v]indictive and selective prosecution" (*id.* at 24), "[p]rosecutorial misconduct" (*id.* at 25-26), "[d]enial of pre-trial bail or imposition of excessive bail" (*id.* at 46), and "[d]enial of counsel on appeal or ineffective assistance of appellate counsel." (*Id.* at 26-27.)[3] Petitioner

_____

or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts" so long as "(1) the first felony was committed after February 1, 1978 . . . ; (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." *Id.*

[3]     Petitioner raised five other issues: (1) "Denial of freedom of speech, association, expression, locomotion, to have meaningful access to the courts and or to petition the
(continued…)

claimed that he was either denied appellate counsel or received ineffective assistance of appellate counsel because appellate counsel refused to give him a copy of the original discovery from his trial, and Petitioner was therefore was unable "to give [his] informed ideas or opinions," to assist in his own defense, and that he was "subjected to selective enforcement" in violation of his "fourth and fourteenth amendment rights." (*Id.* at 25-26.)

On October 5, 2010, the appellate court affirmed the trial court's judgment, concluding that Petitioner's sentence was not excessive, and that Illinois Supreme Court Rule 341(j) barred consideration of the additional issues Petitioner raised in his *pro se* reply brief. (Appellate Ct. Order at 1, 6 (quoting IL. SUP. CT. R. 341(j)) ("[t]he reply brief . . . shall be confined strictly to replying to arguments presented in the brief of the appellee[.]")

Petitioner filed a petition for rehearing. (Def.-Appellant's Pet. for Reh'g in *People v. Nitz*, No. 2-09-0178, Ex. E to Answer, hereinafter "Pet'r's Reh'g Pet.," ¶ 2.) In that petition, filed on October 11, 2010, Petitioner repeated the arguments made in his *pro se* reply brief, and raised twelve additional arguments that he identified as (A) through (L), which included claims that his trial counsel was ineffective (B, F), that the prosecutor engaged in misconduct (F), that his appellate counsel was ineffective for failing to file certain motions or raise certain issues (G, H, I), and that his sentence was illegal because it was excessive (J, K). (*Id.* at 3-5.) The appellate court denied the petition for rehearing on November 12, 2010. (Am. Order of 11/12/10 in *People v. Nitz*, No. 2-09-0178, Ex. F to Answer.)

Petitioner filed a petition for leave to appeal to the Illinois Supreme Court on November 30, 2010, raising the ten issues presented in his *pro se* reply brief and repeated in his petition for rehearing. (Pet. for Leave to Appeal in *People v. Nitz*, No. 111456, Ex. G to Answer,

---

government for redress of grievances without hinderance [sic] or fear of retaliation"; (2) "Denial of due process and equal protection of the laws"; (3) "Denial of right to be free from self incrimination [sic]"; (4) "Denial of compulsory process for the attendance of witnesses favorable to the defendant"; and (5) "Trial judges [sic] abuse of discretion." (Pet'rs *Pro Se* Reply Br.)

hereinafter "Pet'r's PLA," at 3-65.)  On January 26, 2011, the Illinois Supreme Court denied his petition for leave to appeal (Answer ¶ 5), and on March 8, 2011, the court denied his petition for leave to file a motion for reconsideration.  (Letter from Grosboll to Nitz of 3/8/11, Ex. H to Answer.)  Petitioner did not file a petition for *certiorari* with the United States Supreme Court. (Answer ¶ 5.)

## B.    Post-Conviction Review

While his direct appeal was pending, Petitioner pursued several other state remedies. On December 29, 2010, he filed a petition in the state trial court under the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*  (Post-Conviction Pet. in *People v. Nitz*, No. 07-CF-2821, Dec. 29, 2010, Ex. T to Answer, hereinafter "Post-Conviction Pet. 1.")  Petitioner raised thirteen issues,[4] including, as relevant to this case, ineffective assistance of trial counsel, the failure of the prosecutor and trial defense counsel to adhere to rules of professional conduct, ineffective assistance of appellate counsel, and the illegal enhancement of his sentence under 725 ILCS 5/111-3(c).  (*Id.* at 3-6.)  The circuit court dismissed Petitioner's post-conviction petition on January 19, 2011, concluding that it "fails to state the gist of a constitutional claim and has no basis in law or fact."  (Op. in *People v. Nitz*, No. 07-CF-2821, Ex. U to Answer, hereinafter "Circuit Ct. Post-Conviction Pet. 1 Op.," at 2.)  Through appointed counsel, Petitioner filed an appeal, but then withdrew the appeal (Order, Apr. 4, 2011, in *People v. Nitz*, No. 2-11-0123 [14], at 43) in order to file a second petition relying on additional evidence not part of the appellate record.  (Mot. for Status of Previously Filed Mot. in *People v. Nitz*, No. 07-CF-2821, at 30 [14], hereinafter "4/20/11 Circuit Court Mot.," at 2 ¶ 2.)

---

[4]     In this first post-conviction petition, Petitioner raised the same twelve arguments identified as (A) through (L), that he had presented on direct appeal in his motion for rehearing before the Second District Appellate Court.  (*Compare* Pet'rs Reh'g Pet. at 3-5, *with* Post-Conviction Pet. 1 at 3-6.)  He also raised an additional thirteenth argument in a supplemental filing, identified by the circuit court as (M).  (Circuit Ct. Post-Conviction Pet. 1 Op. at 1; Post-Conviction Pet. 1.)

In that second post-conviction petition, filed *pro se* on March 22, 2011,[5] Petitioner raised the same ten issues first raised in his *pro se* reply brief filed on direct appeal. (Am. or Successive Pet. for Post-Conviction Relief in *People v. Nitz*, No. 07-CF-2821, Mar. 22, 2011, Ex. V to Answer, hereinafter "Post-Conviction Pet. 2," at 7-47.) Additionally, Petitioner argued at least some, if not all,[6] of the same issues raised in his first post-conviction petition. (*Id.* at 53-61.) The circuit court denied Petitioner leave to file a successive post-conviction petition on April 5, 2011. (Order in *People v. Nitz*, No. 07-CF-2821, Ex. W to Answer, hereinafter "Cir. Ct. Post-Conviction Pet. 2 Order.") Then on May 2, 2011, the court denied Petitioner's motion for reconsideration and/or to file an amended petition. (No. 07-CF-2821 Docket Rep., Ex. M to Resp't's Reply to Pet'r's Resp. to Resp't's Mot. to Dismiss [17], at 21.)

Petitioner appealed *pro se*, raising the same issues as those in his first post-conviction petition. (*See* Br. for *Pro-Se* Appellant in *People v. Nitz*, No. 2-11-0479, Ex. Y to Answer, at 4-19.) On June 4, 2012, the Second District Appellate Court affirmed. (*People v. Nitz*, 2012 Ill. App. 2d 110479-U (2012), Ex. X to Answer, hereinafter "Appellate Ct. Post-Conviction 2 Op.," ¶ 1.) The court noted that Petitioner failed to file a complete record on appeal to support his claims (for example, he did not provide a copy of the circuit court's order denying him leave to

---

[5]     Attorney Hildebrand appears to have represented Petitioner in the initial appeal of his first post-conviction petition. (*See* Letter from Hildebrand to Nitz of 4/5/2011 [14], at 42.) Petitioner does not explain when or why that representation ended, but his second post-conviction petition was filed *pro se*. (*See* Am. or Successive Pet. for Post-Conviction Relief in *People v. Nitz*, No. 07-CF-2821, Mar. 22, 2011, Ex. V to Answer, hereinafter "Post-Conviction Pet. 2.")

[6]     In his successive post-conviction petition, Petitioner raised arguments (A) through (F), but the document ends at (E), and does not appear to raise (F) through (L). (Post-Conviction Pet. 2 at 53-61.) Petitioner has repeated arguments (A) through (L) verbatim in various state court proceedings, including his petition for leave to appeal his successive petition. It may be that the copy of the Post-Conviction Petition 2 provided to this court as an exhibit to Respondent's Answer is incomplete. (*See* Am. Pet. for Leave to Appeal in *People v. Nitz*, No. 114596, Ex. AA to Answer, hereinafter "Post-Conviction Pet. 2 PLA," at points and authorities) (raising twelve arguments labeled (A) through (L), exactly the same as those filed in Post-Conviction Pet. 1.)

file a successive petition), and did not explain the gaps in the record. (Appellate Ct. Post-Conviction Pet. 2 Op. ¶ 10.) Without a copy of the trial court's order, the Second District Appellate Court concluded that it "ha[d] nothing to review" and instead "must presume that the [lower] court's judgment was in conformity with the law and had a sufficient factual basis." (*Id.*)

Petitioner filed a petition for leave to appeal to the Illinois Supreme Court, raising the same issues presented in his successive petition, and explaining that he never received a copy of the original record. (Post-Conviction Pet. 2 PLA.) The Illinois Supreme Court denied his petition for leave to appeal on September 26, 2012.[7] (Answer ¶ 11.)

### C. § 2-1401 Petition for Relief from Judgment and State Habeas Petition (735 ILCS 5/10-101, *et seq.*)

In addition to his direct appeal and his post-conviction petitions, Petitioner also filed two other petitions attacking his sentence. First, in September 2009, Petitioner filed a *pro se* petition for relief from judgment under 735 ILCS 5/2-1401. (Pet. for Relief from J., Sept. 23, 2009, Ex. I to Answer [44], hereinafter "§ 2-1401 Pet.") In it, Petitioner made a variety of claims, including allegations that his trial counsel was ineffective,[8] that he was denied access to discovery materials (*id.* at p. 20 ¶ 28), that the prosecutor failed to disclose exculpatory evidence (*id.* at p. 19 ¶ 25, p. 21 ¶ 30), and that his bond in this case and others was excessive. (*Id.* at p. 21 ¶ 31.) The circuit court dismissed his petition (Op. in *People v. Nitz*, No. 07-CF-2821, Ex. J to Answer, hereinafter "Circuit Ct.'s § 2-1401 Op.," at 2), and Petitioner, represented by Mr. Hildebrand, appealed, arguing that court erred by dismissing that petition *sua sponte* less than

---

[7]     The Illinois Supreme Court's order denying Petitioner's PLA does not appear in the record.

[8]     Petitioner argued that his trial counsel was ineffective because his trial counsel had a conflict of interest (§ 2-1401 Pet. at p. 13 ¶ 2), advised Petitioner to plead guilty (*id.* at p. 14 ¶ 5), did not challenge the admission of fingerprint lifts from the crime scene into evidence (*id.* at p. 14 ¶ 7), did not call certain witnesses (*id.* at p. 20 ¶ 27), read a statement into evidence related to another criminal charge (*id.* at p. 21 ¶ 32), ignored Petitioner's requests concerning jury selection (*id.* at p. 21 ¶ 32), and did not adopt Petitioner's *pro se* motions. (*Id.* at p. 22 ¶¶ 33-35, p. 23 ¶ 37.)

thirty days after Petitioner filed it. (Pet.-Appellant's Br. in *People v. Nitz*, No. 2-09-1165, Ex. K to Answer, hereinafter "Pet'r's § 2-1401 Appellate Br.," at i.) The Appellate Court affirmed on June 18, 2012, but modified the dismissal to one without prejudice; yet there is no evidence that Petitioner ever filed a new § 2-1401 petition. (*People v. Nitz*, 2012 Ill. App. (2d) 091165, 971 N.E.2d 633, 637 (2012).) Petitioner sought a rehearing, but the Appellate Court denied that request on August 1, 2012 (Rep. on Status of Petr's State Ct. Proceedings [24] at 1), and the Illinois Supreme Court denied his petition for leave to appeal.[9] (Pet. for Leave to Appeal in *People v. Nitz*, No. 114824, Ex. O to Answer, hereinafter "Petr's § 2-1401 PLA," at 1; Answer ¶ 6.)

Second, Petitioner filed two state habeas petitions. The first was dismissed without prejudice for improper venue (Order in *Nitz v. Kachiroubas*, No. 2010 MR 1282, Ex. E to Resp't's Mot. to Dismiss at 59 [11], at 1-2), and the second alleged the same ten issues raised in his *Pro Se* Reply Brief on direct appeal, as well as "other *pro se* claims for relief/causes of action."[10] (Pet. for State Habeas Relief in *Nitz v. Birkey*, No. 2010 MR 1602, Nov. 5, 2010, Ex. P to Answer, hereinafter "State Habeas Pet," at 7-47.) None of the issues raised appear to attack the Eighteenth Circuit Court's jurisdiction over the case's subject matter or person of Petitioner, or to allege a post-conviction occurrence that would entitle him to relief here. And, after the circuit court dismissed the petition on March 30, 2011, Petitioner did not appeal. (Order in *Nitz v. Birkey*, No. 2010 MR 1602, Ex. S to Answer.)

---

[9]     Again, it is not clear when Mr. Hildebrand withdrew from the representation, but Petitioner filed his PLA from the denial of the § 2-1401 *pro se*.

[10]     These issues include complaints concerning medical treatment provided by the Illinois Department of Corrections, a Social Security disability claim, and a list of persons against whom Petitioner has complaints and alleges "constitutional violations." (State Habeas Pet. at 50-58.)

**D.      Federal Habeas Petition**

After his petition for leave to appeal to the Illinois Supreme Court was denied, but while the other state petitions were pending, Petitioner filed this federal petition for a writ of habeas corpus on March 15, 2011.  As described above, Petitioner has asserted a *Brady* claim, a claim of ineffective assistance of trial and appellate counsel, an "excessive bail" challenge, and a challenge to his sentence as an improper "double enhancement."  (Habeas Pet. at 5-6.)[11]  This court stayed proceedings pending the outcome of the various state court post-conviction challenges, but lifted the stay on March 11, 2013.  Respondent has filed an answer and the case is ready for decision.

## DISCUSSION

Under 28 U.S.C. § 2254, a federal court may grant a writ of habeas corpus to a petitioner in custody pursuant to a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  A federal court may not grant an application for the writ unless the petitioner has exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1)(A).  If all such remedies have been exhausted, a court may grant the writ only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d).

A petitioner has exhausted state court remedies when the petitioner has given the state courts a "full and fair opportunity" to hear federal constitutional claims through "one complete round" of proceedings, including discretionary review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In Illinois, a petitioner seeking federal habeas relief may exhaust state court remedies

---

[11]      In support of each of his claims, Petitioner cites to arguments (A) through (L) raised on direct appeal in his petition for rehearing with the Second District Appellate Court. (Habeas Pet. at 5-6; *see* Pet'rs Reh'g Pet. at 3-5.)

by raising his federal constitutional claims on direct appeal or in post-conviction proceedings under the Post-Conviction Hearing Act, 725 ILCS 5/122-1(a)(1). *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (holding that petitioner procedurally defaulted claims because "[h]e did not pursue [them] . . . on direct appeal or in the post-conviction proceeding"); *see also United States ex rel. DeFrancisco v. Sigler*, No. 08-C-6656, 2010 WL 1031834 at *8 (N.D. Ill. Mar. 17, 2010) (reasoning that in determining whether petitioner has exhausted remedies to challenge an Illinois conviction on federal habeas, "a federal court's exhaustion and procedural default analyses . . . are limited to direct appeals and post-conviction proceedings.").

Illinois also provides other procedures for relief from state court judgments, but these are limited in scope and less likely to satisfy the requirement that a petitioner exhaust his state court remedies. State habeas proceedings (735 ILCS 5/10-101 *et seq.*) are limited to claims that the petitioner "has been incarcerated under a judgment of a court that lacked jurisdiction of the subject matter or the person of the petitioner, or where there has been some occurrence subsequent to the prisoner's conviction that entitles him to release." *Beacham v. Walker*, 231 Ill. 2d 51, 58-59, 896 N.E.2d 327, 332 (2008) (observing that a court may not review a state habeas petition "that do[es] not exhibit one of these defects, even though the alleged error involves a denial of constitutional rights"); *see* Causes for Discharge When in Custody on Process of Court, 735 ILCS 5/10-124; *see also Gornick v. Greer*, 819 F.2d 160, 161 (7th Cir. 1987) ("[Petitioner] apparently did raise the pertinent issues in a state habeas corpus petition before the Illinois Supreme Court, but only jurisdictional issues . . . can be properly raised in such a proceeding, so the state habeas petition can not be the basis of [Petitioner's] having exhausted his state court remedies.").

Section 2-1401, 735 ILCS 5/2-1401 *et seq.*, authorizes a court to grant relief from judgments in both civil and criminal cases. *People v. Vincent*, 226 Ill. 2d 1, 8, 871 N.E.2d 17, 22-23 (2007). A person seeking relief from judgment under § 2-1401 must establish "a defense or claim that would have precluded entry of the judgment in the original action" by a

preponderance of the evidence, and demonstrate "diligence in both discovering the defense or claim and presenting the petition." *Vincent*, 226 Ill. 2d at 7-8, 871 N.E.2d at 22. Petitions under § 2-1401 are not appropriate vehicles for raising and exhausting federal constitutional claims, as these petitions are intended to afford an opportunity to challenge the factual, and not constitutional, bases for the conviction. *Id.*; *see Henderson v. Pierce*, No. 11-C-378, 2011 WL 1740076 at *2 (N.D. Ill. May 5, 2011) ("[A] pending motion for post judgment relief is not relevant to the Court's exhaustion analysis."); *United States ex rel. Giampaolo v. Anglin*, No. 07-C-2612, 2008 WL 4133383 at *3 (N.D. Ill. Aug. 20, 2008) (same).

Similarly, and yet distinct from the exhaustion requirement, a petitioner seeking federal habeas relief also must not have procedurally defaulted any of the claims raised in the federal habeas petition. To avoid procedural default, a petitioner must "fairly present" his constitutional claim at each level of the state judiciary. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). Only a federal or constitutional claim, presented in such terms and decided on this basis by the state courts, can satisfy this requirement. A federal court will not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *superseded by statute on other grounds*, 28 U.S.C. § 2254(b)(2).

Procedural default is "neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Therefore, a court may choose to ignore a procedural default if the state waives the default, *Lewis*, 390 F.3d at 1029, or if the petitioner qualifies for one of two narrow exceptions: (1) by showing that there was cause for the default, either because counsel was ineffective or because another objective, external impediment prevented petitioner from raising the defaulted claim, and actual prejudice resulting from the constitutional violation, *Coleman*, 501 U.S. at 750;

*Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Lewis*, 390 F.3d at 1026; or (2) by showing that failure to excuse the procedural default would result in "a fundamental miscarriage of justice" because the petitioner is "actually innocent of the offense for which he was convicted." *Lewis*, 390 F.3d at 1026; *see also Coleman*, 501 U.S. at 750.

As described above, Petitioner's § 2254 Petition and his Reply present a total of seven grounds for relief, but none are exhausted, and all but one (the "good time credit" claim) are procedurally defaulted. Nor has Petitioner established that the court should excuse his procedural default under any exception. In addition, four of Petitioner's claims are not cognizable on federal habeas review: the excessive bail argument is moot, and the sentence challenge raises only state law issues. The denial of good time credits does not give rise to federal claim, and the medical treatment claim is an alleged violation that is unrelated to the legality of custody. Finally, Petitioner's allegations concerning the purported illegality of his term of supervised release misrepresents facts in order to suggest a federal claim where none exists. Each claim is discussed in turn.

## I.    Claim 1: *Brady* violation

Petitioner contends that the prosecution withheld notes taken by Sergeant Harvey regarding her investigation of the theft and interview with Petitioner, which, Petitioner asserts, he could have used to impeach her testimony and that of another testifying officer, to "show[] exculpatory evidence existed," and to "mitigate[] punishment." ('Pet'r's PLA at 20, 25; *see also* Habeas Pet. at 5 (citing "all other arguments" in the PLA to support the *Brady* claim).) As noted, Sergeant Harvey testified that she destroyed the notes, and the court instructed the jury concerning the prosecution's failure to disclose. Petitioner nevertheless attached what he now claims are copies of those notes as an exhibit to his petition (how Petitioner got hold of notes Sergeant Harvey believes she destroyed is unexplained). (*See* "Harvey's Notes," Ex. to Hab. Pet. [5], at 5-8.) Petitioner both failed to exhaust and has procedurally defaulted his *Brady* claim because he did not present the claims in one complete round of state court proceedings and

has no available state court remedies left. Furthermore, Petitioner's explanations for his default satisfy neither exception to procedural default that would permit the court to ignore the procedural bar.

Petitioner did present some form of this claim in each of his four separate state court proceedings, but the claim was never reviewed in one complete round of any proceeding, and as a result was never exhausted. On direct appeal, Petitioner initially argued only that his sentence was excessive. (Pet'r's Appellate Br. at 2-3.) In a later *pro se* filing, he alleged that his prosecution was "vindictive and selective" and that the prosecutor engaged in "misconduct" (presumably a reference to the the alleged *Brady* violation).[12] (Pet'r's *Pro Se* Reply Br. at 24-26.) Because state procedural rules limit the scope of the reply brief, however, the appellate court refused to consider this issue. (Appellate Ct. Order at 6.) Thus, while Petitioner's direct appeal concerning his sentence proceeded through one complete round of proceedings, Petitioner was procedurally barred from presenting his *Brady* claim on direct appeal.

Petitioner did raise *Brady*-related claims in his post-conviction petitions, but as to those petitions, he did not complete one full round of state court review. In his first petition, he alleged that exculpatory evidence had not been produced, and was either lost or destroyed, including fingerprint evidence and Sergeant Harvey's "notes, video's [sic] etc." (Post-Conviction Pet. 1 at 7, 12-13.) The circuit court dismissed that initial petition, and Petitioner voluntarily withdrew his appeal from that ruling in order to file a successive post-conviction petition, in which he repeated the allegations from the first petition and added a claim of prosecutorial misconduct. (Post-Conviction Pet. 2 at 25, 26, 54, 59-60.) But Illinois law prohibits filing of a successive post-conviction petition without leave of court, absent a showing of cause and prejudice, 725 ILCS 5/122-1(f), and the circuit court denied leave to file that successive petition "for reasons stated in

_____

[12]     Petitioner's Habeas Petition cites "argument (D)," an apparent reference to the *Brady* claim in his PLA.

the record." (Cir. Ct. Post-Conviction Pet. 2 Order.)    The Post-Conviction Hearing Act also dictates that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."  735 ILCS 5/122-3.  The Appellate Court affirmed dismissal of the successive petition, noting Petitioner's failure to submit a complete record, and presuming that that circuit court's ruling was consistent with the law and facts.  (Appellate Ct. Post-Conviction 2 Op. ¶ 10.)  The Illinois Supreme Court denied Petitioner's subsequent PLA.

Petitioner also raised potential *Brady* claims in his § 2-1401 petition, alleging that the prosecutor failed to disclose exculpatory evidence.  (§ 2-1401 Pet. at p. 19 ¶ 25, p. 21 ¶ 30.)  The circuit court dismissed that petition, as well, on the ground that it did identify any "newly discovered or additional evidence," which would entitle Petitioner to relief.  Petitioner challenged that ruling on procedural grounds, and the Appellate Court modified the adverse judgment to a dismissal without prejudice.  Petitioner did not re-file, however; instead, he sought leave to appeal to the Illinois Supreme Court—but rather than presenting the *Brady* claim at that stage, he instead argued that appellate counsel was ineffective.  The Illinois Supreme Court denied leave to appeal.

Finally, in his state habeas petition, Petitioner again alleged that the prosecutor failed to disclose "exculpatory evidence," referring to Sergeant Harvey's notes, and engaged in "misconduct."  (State Habeas Pet. at 20, 25-26.)  The circuit court dismissed that petition, however, and Petitioner failed to appeal.  Because Petitioner did not raise the same issue in one complete round of proceedings, he failed to exhaust his *Brady* claim.

## II.    Claim 2:  Ineffective Assistance of Counsel

Similarly, Petitioner alleged that both his trial and appellate counsel were ineffective in various state court proceedings, but failed to exhaust either claim in one complete round of review.

### A.    Trial Counsel

Petitioner first alleged that his trial counsel was ineffective in his *pro se* reply brief to the Appellate Court on direct appeal.  (Pet'r's *Pro Se* Reply Br. at 22-23.)  Citing *Strickland v. Washington,* 466 U.S. 668, 688 (1984), Petitioner claimed that his trial counsel was ineffective for numerous reasons: (1) because Petitioner had filed previous complaints against the DuPage County Public Defender's Office and other participants in the criminal justice system, and because the Office had represented Petitioner's brothers, who had provided information to the police concerning Petitioner, counsel had a conflict of interest; (2) counsel permitted the prosecution to "suppress and destroy" unidentified "exculpatory evidence" and to introduce unidentified perjured testimony at trial; (3) counsel "forced" Petitioner to testify over Petitioner's objections; and (4) counsel failed to negotiate a favorable plea bargain despite his knowledge that Petitioner had provided useful information to the police.  (*Id.*)  Because these claims (like the *Brady* claim) had not been raised in the opening brief on appeal, however, the Illinois Appellate Court refused to consider them.  (Appellate Ct. Order at 6.)

Post-conviction petitions would have provided another avenue for presentation of these claims, but Petitioner failed to exhaust them in that context, as well.  In his first post-conviction petition, Petitioner alleged both that his trial counsel was ineffective in violation of his Sixth Amendment right to counsel (Post-Conviction Pet. 1 at 15, 18), and that trial counsel improperly refused to adopt and file Petitioner's motions for new trial or arrest of judgment, and for reduction or reconsideration of his sentence.  (Post-Conviction Pet. 1 at 9-10.)  Petitioner's successive post-conviction petition made similar allegations.  (Post-Conviction Pet. 2 at 22, 56.)  Petitioner voluntarily dismissed his first petition before it was considered by the Appellate Court, however, and then was denied leave to file a successive petition; he did not exhaust his ineffective assistance of counsel claim on post-conviction review.

Petitioner also raised his ineffective assistance of trial counsel claim in both a § 2-1401 petition and state habeas petition.  Assuming his ineffective assistance claim was cognizable

under § 2-1401 or in a state habeas petition at all (*but see Vincent*, 226 Ill. 2d at 7-8, 871 N.E. 2d at 22; *Beacham*, 231 Ill. 2d at 58-59, 896 N.E.2d at 332), Petitioner did not exhaust the claim in either of those proceedings. In his § 2-1401 petition, Petitioner presented arguments he had put forward in his *pro se* reply brief on direct appeal. Then, on appeal from denial of that § 2-1401 petition, he raised only a procedural argument; effectively prevailed, in that the Appellate Court converted the dismissal to one without prejudice; but then declined to re-file. (*People v. Nitz*, 2012 Ill. App. (2d) 091165, 971 N.E.2d 633, 637 (2012); Pet'r's § 2-1401 Appellate Br. at i.) He asserted his ineffective assistance claim in his state habeas petition (State Habeas Pet. at 22), but failed to appeal from dismissal of that petition.

### B.      Appellate Counsel

Petitioner's claims that his appellate counsel was ineffective followed a similar trajectory as those concerning his trial counsel. On direct appeal, Petitioner alleged in his *pro se* reply brief that his appellate counsel was ineffective and prevented Petitioner from raising other issues on appeal. (Pet'r's *Pro Se* Reply Br. at 26-27.) Neither the Appellate court nor the Illinois Supreme Court considered that claim, as the issues on direct appeal were limited to the one presented in Petitioner's initial appellate brief (an argument that his sentence was excessive). The issue of the alleged ineffective assistance of appellate counsel originated on direct appeal, of course, meaning that Petitioner did not have the opportunity to develop an adequate record at that stage. A more appropriate forum in which to address these claims was through Petitioner's post-conviction petition. *See, e.g., People v. Makiel*, 358 Ill. App. 3d 102, 104, 120, 830 N.E.2d 731, 736, 749 (1st Dist. 2005) (discussing the three stages of a post-conviction petition in the trial court with an evidentiary hearing as the third stage, and concluding that petitioner was entitled to an evidentiary hearing for his ineffective assistance of appellate counsel claim).

In his first post-conviction petition, Petitioner did allege that his appellate counsel was ineffective for moving to dismiss Petitioner's *pro se* interlocutory appeal seeking substitution of

judge and a change of counsel and venue.[13]  By doing so, Petitioner asserted, appellate counsel deprived him of review of his excessive bail claim. Counsel was also ineffective, Petitioner asserted, in refusing to adopt issues raised by Petitioner in his *pro se* motions for new trial or arrest of judgment, and for reduction or reconsideration of his sentence.  (Post-Conviction Pet. 1 at 16-18 (claims G-I); *see also* Answer ¶ 8(G); Letter from Lilien to Nitz of 9/12/08, Attach. 4 to Habeas Pet. [5] at 28.)  The circuit court dismissed petitioner's claims of ineffective assistance of appellate counsel, concluding that they "all deal with events occurring after petitioner's trial and are not issues which raise a constitutional violation claim occurring at trial," and that "the post conviction petitions [sic] fails to state the gist of a constitutional claim and has no basis in law or in fact."  (Circuit Ct. Post-Conviction Pet. 1 Op. at 1-2.)

The purpose of the Illinois Post-Conviction Hearing Act is "to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal," and therefore, "[i]ssues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on a direct appeal, but were not, are forfeited."  *People v. English*, 369 Ill. Dec. 744, 750, 987 N.E.2d 371, 377 (Ill. 2013); *see also* 735 ILCS 5/122-1(a)(1).  These doctrines, however, "are relaxed where fundamental fairness so requires, where the forfeiture stems from the ineffective assistance of appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record." *English*, 369 Ill. Dec. at 750, 987 N.E.2d at 377.  Here, because Petitioner was alleging that his appellate counsel was ineffective, his post-conviction petition likely *was* the proper proceeding in which to raise this issue, and therefore, the circuit court should have considered it.  *See, e.g., People v. Lacy*, 407 Ill. App. 3d 442, 461, 943 N.E.2d 303, 320 (1st Dist. 2011) ("[T]he claim of ineffective assistance of appellate counsel

---

[13]     The parties do not appear to have filed a copy of either the "interlocutory appeal" or the appellate court's order addressing it.

must appear in the postconviction petition."). The Illinois Appellate Court could have corrected this error; but Petitioner voluntarily withdrew his appeal, effectively abandoning this opportunity to exhaust the claim.

This claim fails for other reasons as well. Under Illinois law, post-conviction petitions in non-death-penalty cases proceed through three stages of consideration; first,[14] within 90 days of filing, the trial court reviews the petition, presuming its allegations to be true, and determining "whether the petition is frivolous or is patently without merit." *People v. Hodges*, 234 Ill. 2d 1, 10-11, 912 N.E.2d 1204, 1208-09 (2009). The Illinois Supreme Court has described this as a "low" threshold, particularly for *pro se* petitioners, and holds that dismissal of a post-conviction petition at this first stage is appropriate "only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 9, 11-12, 912 N.E.2d at 1208-09. Petitioner here appears to have failed to satisfy even this low burden: he has presented no basis for a conclusion that his appellate counsel was ineffective or prejudiced his defense by failing to adopt "issues" raised in Petitioner's *pro se* motions. Petitioner has not identified these "issues," nor does he state how they would have produced a different result, and furthermore, he admits that his trial counsel submitted similar motions "substitut[ing]" for those filed by Petitioner. (Post-Conviction Pet. 1 at 18.) Second, Petitioner complains that counsel withdrew an interlocutory appeal challenging bail as excessive. Illinois rules do permit an interlocutory appeal of bail rulings prior to conviction, *see* Ill. Sup. Ct. R. 604(c), but there is no basis for concluding that counsel's failure to do so contributed to any constitutional violation that resulted in Petitioner's conviction.

As noted, Petitioner presented these claims to the circuit court but then voluntarily withdrew his appeal, opting instead to file a successive post-conviction petition, in which he added a claim that appellate counsel had denied him access to discovery materials. (Post-

---

[14]     If the petition survives the first stage, then the petitioner has a statutory right to an attorney and the State must either answer or file a motion to dismiss the petition. *People v. Hodges*, 234 Ill. 2d 1, 10-11, 912 N.E.2d 1204, 1208-09 (2009).

Conviction Pet. 2 at 26.) Illinois courts disagree on whether trial counsel's failure to provide discovery materials to the defendant "is a matter of trial strategy and judgment," and thus, within counsel's discretion, or instead, constitutes ineffective assistance of counsel. *See People v. Hobson*, 386 Ill. App. 3d 221, 238-39, 897 N.E.2d 421, 435-36 (1st Dist. 2008) (comparing *People v. Smith*, 268 Ill.App.3d 574, 645 N.E.2d 313 (1st Dist. 1994), and *People v. Davison*, 292 Ill.App.3d 981, 686 N.E.2d 1231 (4th Dist. 1997)). No authority suggests appellate counsel has such an obligation. In any event, the circuit court denied Petitioner leave to file a successive post-conviction petition.

Finally, Petitioner raised the same claims concerning the ineffectiveness of his appellate counsel in state habeas proceedings. (State Habeas Pet. at 26.) Again, state habeas likely was not the appropriate forum in which to raise a claim that appellate counsel was ineffective, but even if it were, Petitioner's failure to appeal from dismissal of that petition means that he did not exhaust this claim.

## III. Claim 3: Excessive Bail "on void *ab initio* charges"

Petitioner also urges that he is entitled to habeas relief because he was subject to excessive bail "on void *ab initio* charges." Whether properly preserved or not, the claim is a non-starter. Challenges to the bail set by a trial court become moot once a defendant has been convicted. *Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982). Similarly, this court's conclusion that the bail imposed was excessive would not entitle Petitioner to a writ of habeas, and therefore, this court is unable to provide "any effectual relief" in response to Petitioner's claim of excessive bail. *See Lee v. United States*, No. 90-2513, 1991 WL 146706, at *2 (7th Cir. Aug. 2, 1991) (citing *Murphy* and reasoning that habeas petitioner's allegations that his counsel was ineffective at his bail review hearing became moot when he was convicted).[15]

---

[15] Even if the excessive bail claim were not moot, Petitioner still would be procedurally barred from presenting it on habeas as he did not exhaust, and has procedurally defaulted, the claim. On direct appeal, the court refused to consider the issue due to a local

(continued…)

## IV.    Claim 4: "Double Enhancement" Resulted in Illegal Sentence

Finally, Petitioner alleges that the charge on which he was convicted was "doubly enhanced" in violation of 725 ILCS 5/111-3(c), and that as a result, he was wrongfully sentenced as a Class X offender under 730 ILCS 5/5-4.5-95 (formerly 730 ILCS 5/5-5-3(c)(8)). (Habeas Pet. at 6.)   He also challenges the statute under which he was charged, 725 ILCS 5/111-3(c), as unconstitutional because it is "ambiguous" and allegedly permits a person to be charged with a more serious offense than what is supported by the evidence.  (Pet'r's Reh'g Pet. at 19-20.)

Neither claim provides a basis for relief.  First, Petitioner's illegal sentence claim turns on the interpretation and application of state law, and as a result, is not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all'") (internal citations omitted).  Petitioner appears to challenge his sentence in two ways: first, he claims that he was originally charged with a Class A misdemeanor, but that the charge was changed (several times) without notice, and that he was convicted of a Class 2 felony (Pet'r's Reh'g Pet. at 19-20); and, second, that his sentence was wrongfully "enhanced" because he was ultimately sentenced as a Class X offender, which requires an underlying conviction of a Class 1 or Class 2 felony.  (*Id.*)  Yet whether the state modified his charge in violation of the form-of-charge

procedural rule (Pet'r's *Pro Se* Reply Br. at 46; Appellate Ct. Order at 6); the court denied Petitioner leave to file a successive post-conviction petition, which alleged excessive bail (Post-Conviction Pet. 2 at 46); Petitioner failed to file a second § 2-1401 petition after it was dismissed without prejudice (§ 2-1401 Pet. at p. 21 ¶ 31); and Petitioner did not appeal the dismissal of his state habeas petition.  (State Habeas Pet. at 46; Order in *Nitz v. Birkey*, No. 2010 MR 1602.)

statute, 725 ILCS 5/111-3(c), or whether the trial court properly applied Illinois law governing repeat offenders, 730 ILCS 5/5-4.5-95(b), are matters of state law. As a result, neither claim challenging his sentence as illegal is cognizable on federal habeas review.

In any case, Petitioner's claims lack support in the record. Petitioner was on notice that he was charged and convicted of theft from a place of worship, a Class 2 felony: he was indicted by a grand jury for theft from a place of worship under 720 ILCS 5/16-1(a)(1)(A), (b)(4.1), and at trial, the jury received instructions specific to that charge, and found him guilty. (Trial Tr. at 230:23-24, 231:1-18; 246:9-10.) Significantly, at his sentencing, Petitioner raised the same issues concerning the change in the original charge from a Class 3 to a Class 2 felony, resulting in a Class X sentence. (Sentencing Tr. at 5:23-24, 6:1-7.) Petitioner asked the court whether this change constituted "double enhancement," and the court assured him that correctly characterizing the charge as a Class 2 felony was not improper. (*Id.* at 6:10-14.)

To the extent Petitioner attempts to challenge the constitutionality of the Illinois statute governing the form of charge, 725 ILCS 5/111-3(c) (Pet'r's Reh'g Pet. at 19-20), that claim also fails. Petitioner cites *People v. Jameson*, 162 Ill. 2d 282, 284-85, 642 N.E.2d 1207, 1208-09 (1994), but that case defeats his argument. In *Jameson*, defendants appealed their sentences on the ground that the charging instrument did not put them on notice that they would be sentenced as Class X offenders, purportedly in violation of § 5/111-3(c). The Illinois Supreme Court rejected the argument, concluding that § 5/111-3(c) requires the state to notify the defendant only if "a prior conviction elevates the classification of the *offense* with which a defendant is charged and convicted, rather than simply the sentence imposed," and observing that a defendant has no "due process right to right to receive pretrial notice of the sentence he will receive upon conviction." 162 Ill. 2d at 288, 291, 642 N.E.2d at 1210-11.

The court need not address the merits of this challenge in any depth; contrary to a conclusion this court expressed earlier,[16] it appears that Petitioner did not exhaust this claim, either. While Petitioner did challenge his sentence in one complete round of state court proceedings on direct appeal, the only argument he presented is that his 12-year sentence is excessive. (Pet'r's Appellate Br. at 1.) In support, he cited state law for the argument that the trial court had abused its discretion in imposing that sentence. Notably, Petitioner did not challenge the charging instrument or the form-of-charge statute, § 5/111-3(c), as unconstitutional. (*Id.*) Thus, neither the specific issue raised on appeal ("whether defendant's sentence was excessive" (Pet'r's Appellate Br. at 1)), nor the accompanying brief "alerted the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis." *Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007). Petitioner did not fairly present his constitutional challenge to the form-of-charge statute on direct appeal.

Nor did Petitioner exhaust the claim in his post-conviction proceedings. In his first post-conviction petition, Petitioner did present the same claim challenging the legality of his sentence that he now raises in his federal habeas petition (Post-Conviction Pet. 1 at 19-20), but he voluntarily dismissed that petition on appeal. None of Petitioner's other post-conviction filings appear to have raised this issue.

Finally, though analysis of this argument on the merits is not required, the court notes that Petitioner appears to misunderstand the state statute at issue. Specifically, Petitioner asserts that § 5/111-3(c) unconstitutionally permits the state to *charge* defendants with greater offenses than that for which the state has evidence—but § 5/111-3(c) does not concern the state's charging decisions. Rather, § 5/111-3 governs the required *contents* of the charge, and,

---

[16]     In an order entered on 7/12/11 [19], the court initially found that Petitioner had exhausted his illegal sentence claim.

as interpreted by the Illinois Supreme Court in *People v. Jameson*, subsection (c) specifically requires the state to give the defendant fair warning if a prior conviction elevates the classification of the offense with which the defendant is charged. This notice requirement is not triggered in circumstances like those here, where the Class 2 felony charge was based on the alleged facts of the offense, and the prosecutor's intention to seek an enhanced sentence is based on the defendant's status as a Class X offender. 162 Ill. 2d at 288, 642 N.E.2d at 1210.

This construction of the statute poses no constitutional concerns. And even if this claim were exhausted and the statute were problematic, there would be no basis for habeas relief here; a state court decision upholding the constitutionality of § 5/111-3(c) would not be contrary to, or an unreasonable application of, clearly established federal law. Although Petitioner appears to believe that the *Jameson* Court found the statute to be "unconstitutional," that court in fact reached the opposite conclusion, citing U.S. Supreme Court precedent. (*Compare* Pet'r's Reh'g Pet. at 20 *with Jameson*, 162 Ill. 2d at 291, 642 N.E.2d at 1211-12). Specifically, citing *Oyler v. Boyles*, 368 U.S. 448 (1962), the Illinois Supreme Court observed that "due process does not require that a defendant be notified *in advance of trial* that he could receive an increased sentence based upon his prior criminal convictions." *Jameson*, 162 Ill. 2d at 291, 642 N.E.2d at 1211-12 (emphasis in original). In *Oyler v. Boles*, the Supreme Court reasoned that a defendant facing a recidivist charge must be given a notice and opportunity to be heard on that charge, but that due process does not require the state to notify the defendant before trial on the underlying charge. 368 U.S. at 452. As applied to Illinois' habitual offender statute, Petitioner need only have been given notice and an opportunity to be heard on his status as a Class X offender, which may take place at the sentencing hearing itself. *See Washington v. Cowan*, 25 F. App'x 425, 426 (7th Cir. 2001) (rejecting petitioner's claim on habeas that he was denied due process when he was notified at his sentencing hearing that he would be sentenced under Illinois' habitual offender statute and neither objected nor sought a continuance).

Those requirements were met here. Petitioner became aware of his status as a Class X offender at some time before his sentencing hearing. (*See* Sentencing Tr. at 5:23-24, 6:1-7.) He in fact questioned the court about the matter at sentencing, specifically asking whether his Class X status related to another pending charge. Like the defendant in *Washington*, Petitioner did not object to the classification nor seek a continuance after the court explained that he was a Class X offender because of prior convictions. (*Id.*) As applied here, as explained in *Oyler* and its progeny, § 5/111-3(c) was not contrary to clearly established federal law.

**V.      Petitioner Fails to Satisfy Either Exception to Excuse his Defaulted Claims**

The State has not waived, nor does Petitioner satisfy either exception to, the procedural bar to further review of any of his defaulted claims. Though he does not address the matter in his original § 2254 petition, Petitioner does attempt to do so in his later-filed Motion to Present Exhibits and Facts. (Pet'r's Mot. to Present Exs. & Facts [34, 34-1], hereinafter "Pet'r's Facts & Exs. Mot.," at 27-44.) Generally, that motion contains vague allegations that the trial court and trial and appellate counsel impeded Petitioner's ability to raise the claims presented on habeas so as to exhaust them in state court proceedings. (Pet'r's Facts & Exs. Mot. at 27-44.) The core of Petitioner's explanation for his procedural default appears to be a substantial disagreement with the way in which the courts conducted his original trial and appeal, and with the decisions made by his trial and appellate counsel.

**A.      Cause and Prejudice Exception**

Petitioner alleges that trial counsel's refusal to adopt Petitioner's *pro se* motions caused him to default his *Brady* claim, his ineffective assistance of trial counsel claim, and his illegal sentence claim. (Pet'r's Facts & Exs. Mot. at 22-23, 42, 43.) These circumstances do not, however, establish cause for the default. First, of course, the conduct of his trial counsel had no impact on Petitioner's ability to exhaust his ineffective assistance of trial counsel claim. Petitioner was free to exhaust that claim in post-conviction proceedings, which, as explained earlier, he failed to do. And in order for the ineffectiveness of his trial counsel to serve as

"cause" for his other defaulted claims, Petitioner would be required first to exhaust that claim. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (ineffective assistance of counsel may serve as "cause" for procedural default, but because it is an "independent constitutional claim" it too must be exhausted in state court proceedings).

Similarly, Petitioner suggests that the ineffectiveness of his appellate counsel caused him to procedurally default his *Brady* claim (Pet'r's Facts & Exs. Mot. at 26-27, citing the Fourth Amendment), excessive bail claim (Pet'r's Reh'g Pet. at 16), and illegal sentence claim.  (Pet'r's Facts & Exs. Mot. at 43.)  But, like his ineffective assistance of trial counsel claim, Petitioner's claim that appellate counsel was ineffective cannot serve as "cause" for his default because he failed to exhaust that claim in any state court proceedings.  *Edwards*, 529 U.S. at 451-52; *see also Dellinger v. Bowen*, 301 F.3d 758, 766-67 (7th Cir. 2002) (citing *Edwards* and reasoning that because Petitioner failed to exhaust, and had procedurally defaulted, his ineffective assistance of appellate counsel claim, that claim cannot serve as "cause" for the default of another constitutional claim).

Even assuming that the ineffectiveness of Petitioner's trial or appellate counsel constituted "cause" for the procedural default, Petitioner cannot demonstrate that such a violation caused him "actual prejudice" because it "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must not merely show that there was a *possibility* of prejudice, but rather that the ineffectiveness of trial and appellate counsel caused him *actual* prejudice.  *Frady*, 456 U.S. at 170.  No such showing is made here.  Petitioner's vague allegations that his appellate counsel was ineffective for denying Petitioner access to discovery materials so that he could aid in his own appeal does not demonstrate that he suffered any actual prejudice as a result; he has not identified the discovery materials he needed, nor explained how access to them would have made a difference.

Petitioner's allegations concerning the effectiveness of trial counsel are similarly unpersuasive. Petitioner contends that trial counsel's effectiveness was compromised by a conflict of interest generated by (1) Petitioner's own complaints against other employees of the DuPage County Public Defender's Office as well as "other persons and associates," including at least one prosecutor, police officers, sheriff's deputies, judges, and a notary public, and (2) the Public Defender's representation of Petitioner's brothers who had provided information to the police about Petitioner. (Pet'r's Facts & Exs. Mot. at 22.) These grievances against a wide range of people in the local criminal justice system are insufficient to give rise to a specific conflict of interest, and Petitioner offers no other basis for a conclusion that his attorney "was faced with a choice between advancing his own interests above those of [Petitioner's]." *See Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (reasoning that defendant may assert a conflict of interest claim under either *Strickland* or *Cuyler v. Sullivan*, 446 U.S. 335 (1980), by proving that defense counsel was influenced by "an *actual* conflict of interest") (emphasis in original) (internal citations omitted).

Similarly, Petitioner's claim that trial counsel aided the prosecution in suppressing and destroying exculpatory evidence is unavailing. Petitioner alleges that some unspecified "exculpatory evidence" would have enabled him to impeach the testimony of several police officers at trial, and that his lawyer somehow permitted the prosecution to present perjured testimony. (Pet'r's Facts & Exs. Mot. at 22-23.) Petitioner provides no further substance to these allegations, however; he fails to indicate what the exculpatory evidence is, how the police officers could have been impeached, or what was false in the allegedly perjured testimony, and as a result, fails to allege how trial counsel's conduct caused him actual prejudice.

In fact, the evidence that Petitioner committed theft in a place of worship, which was presented at Petitioner's trial, was substantial. The state presented fingerprint lifts that matched Petitioner's, which were "found on the inside surface of the glass door" of the locked display

case that had contained the stolen property, and police testimony that Petitioner had actually confessed to the crime.  (Appellate Ct. Order at 2.)

### B.    "Fundamental Miscarriage of Justice" Exception

Petitioner also claims that he is innocent, and as such, the court's failure to excuse the default of his claims would result in a fundamental miscarriage of justice.  (Pet'r's Facts & Exs. Mot. at 28-29.)  A claim of actual innocence must be supported by new, reliable evidence or evidence excluded at trial that proves "more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence."  *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).  Petitioner offers no such evidence here.  Instead, he urges that evidence of his innocence—including the testimony of a parole officer, purportedly exculpatory notes written by Sergeant Harvey, and the opportunity to have fingerprint evidence examined by an expert hired by defense counsel—was "lost and destroyed" by the "overt acts and omissions" of trial counsel, the state, and the Glen Ellyn Police Department.  (Pet'r's Facts & Exs. Mot. at 29, 38.)

None of the purportedly "lost" evidence appears exculpatory, however.  According to Petitioner, parole officer James Hall would have testified that the police "had lied to him about armed robbery charges so [Petitioner] could be arrested" and interviewed about the theft (*id.* at 39), and that Petitioner made a "deal" with the police, which resulted in arrests.  (*Id.* at 35.)[17] Hall's testimony perhaps would have had some impeachment value; but it cannot be characterized as new evidence of Petitioner's innocence.  Second, Petitioner asserts that Sergeant Harvey's notes recounted information that he provided to the police during an interview on October 22, 2007, and would have shown that "arrests were made per agreement made between Harvey #83 and I and that police did not live up to their end of the agreement

---

[17]    Petitioner himself testified at trial that he tried to provide the police with "information" on "other cases that [he] knew about."  (Trial Tr. at 160:10-24, 161:1-5.)  He did not describe any "deal" with the police and has not explained why he believed Mr. Hall would have testified about such a "deal."

and used promises and coersive [sic] tacticts [sic] . . . to take involuntary compelled statements out of context during custodial interrogation which they tried to compel an incriminating statement." (*Id.*) Sergeant Harvey testified that she destroyed these notes after she wrote her police report in January 2008 (Trial Tr. at 141:5-12), though Petitioner claims (without explanation) that he received the notes in June 2010 (Habeas Pet. at 5), and has submitted them as an exhibit.[18] (*See* Harvey's Notes.) Neither the information that Petitioner claims that Sergeant Harvey's notes would have contained, nor the exhibit submitted by Petitioner, contains any evidence of Petitioner's innocence. Finally, Petitioner claims that the fingerprint evidence was "unreliable[] due to tampering, chain of custody problems and fabrication," but Petitioner provides no further basis for his claims, and indeed admitted on the stand that he "may have" placed his hand inside the glass box—presumably to explain the presence of his fingerprints there. (Pet'r's Facts & Exs. Mot. at 39.) Ultimately, Petitioner's allegations are far from proving his actual innocence such that it is more likely than not that no reasonable juror would have convicted Petitioner.

## V.    Additional Claims

As described earlier, Petitioner's response to the Answer filed by the Respondent in this case raises three additional issues:[19]  that  the Illinois Department of Corrections (the "IDOC")

---

[18]    The notes do not contain any obviously exculpatory information. Page one contains a telephone number for "Parole" and "Jack Tweedle," which is incomplete; page two lists three "theft's," including the one at St. Mark's, Petitioner's name and date of birth with the comment "theft over $300, parole hold" besidehis name, his brothers' names, and the names of two "P.O."s; page three lists types of drugs—"crack," "powder," and "weed,"—with individuals' names next to each (perhaps this is the information that Petitioner alleges he provided to the police); and page four lists various addresses, contains the phrase "stashed it by bridge," and has two business cards attached. (*See* Harvey's Notes.)

[19]    Rule 5(e) of 28 U.S.C. § 2254, which governs § 2254 habeas petitions in district courts, permits a habeas petitioner to file a reply in response to the answer. The Advisory Committee Notes suggest that the court may consider additional arguments raised in the reply as an amendment to the original petition under Rule 15(a) of the Federal Rules of Civil Procedure "when the court feels this is called for by the contents of the answer." 28 U.S.C. § 2254 Rule 5(e), advisory committee note (1976).

has imposed or is trying to impose a term of mandatory supervised release ("MSR") term (Pet'r's Resp. to Answer [47], hereinafter "Reply," at 8); that changes to the Illinois Administrative Code retroactively affected Petitioner's "good time" credits (*id.* at 5-7); and that IDOC has failed to provide Petitioner with necessary medical treatment. (*Id.* at 7.) This last claim—a challenge to denial of medical treatment—is a conditions-of-confinement claim that is not cognizable on federal habeas review, because it does not pose a challenge to the legality of Petitioner's detention. *See* 28 U.S.C. § 2254(a); *Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005) (concluding that because "release from custody is not an option" for a claim that alleges that "medical treatment amounts to cruel and unusual punishment" in violation of the Eighth Amendment, it cannot be addressed on habeas).

For the reasons stated here, Petitioner's remaining two claims concerning the legality of his sentence also do not support habeas relief.

### A.    Claim 5: Illegal MSR Term

First, Petitioner urges that the IDOC has illegally imposed a three-year MSR term to be completed upon his release from prison in violation of his due process rights to be sentenced by a judge. Petitioner relies on *U.S. ex rel. Carroll v. Hathaway*, No. 10-C-3862, 2012 WL 171322 at *9 (N.D. Ill. Jan. 19, 2012). In *Carroll*, the district court held that the IDOC violated the petitioner's due process rights when it unilaterally imposed a MSR term; the court subsequently concluded, however, that the state court's decision upholding the imposition of the MSR term was "not contrary to the clear holding of a Supreme Court case," and denied habeas relief. *Carroll v. Hathaway*, No. 10-C-3862, 2012 WL 6758310 at *2 (N.D. Ill. Sept. 5, 2012). Petitioner here has received a three-year term of MSR, which is required by Illinois law for repeat offenders, *see* 730 ILCS 5/5-4.5-25(l), but *Carroll* has little to do with his circumstances. The three-year MSR term in Petitioner's case *was* imposed by the judge at his sentencing hearing. (Sentencing Tr. at 30:23-24, 31:1-4.) Furthermore, any challenges to the imposition of a MSR term are unlikely to succeed; in *Villanueva v. Anglin*, 719 F.3d 769, the Seventh Circuit

acknowledged that, in past cases, it had granted the writ where "the defendant ultimately pled guilty without any mention of MSR from the sentencing judge" making "petitioners' pleas . . . involuntary," but noted that "failure-to-admonish claims might fail since Congress passed AEDPA and our holding in *Lockhart*[.]"  719 F.3d, 776, 779 (7th Cir. 2013) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006) ("[Petitioner] faces an impossible hurdle in showing that the state court contradicted, or unreasonably applied, clearly established federal law as determined by the Supreme Court because the Court has expressly declined to decide the issue" regarding whether "a defendant must be advised of a term of MSR at the time he attempts to enter a plea of guilty.").

Petitioner's claim that his MSR term was unconstitutionally imposed appears to be another challenge to the propriety of his sentence as a Class X offender.  (*See* Reply at 8, where Petitioner contends he was actually convicted of a Class 3 felony, which does not carry a three-year MSR term.)  Again, Petitioner ignores the facts.  As explained to him at sentencing, Petitioner was convicted of theft from a place of worship, a Class 2 felony, and, because of prior offenses, sentenced as a Class X offender.  (Sentencing Tr. at 6:4-24, 7:1-7, 26:2-5.)  And, as discussed above, Petitioner's challenge to his sentence was not exhausted in state court proceedings, and is procedurally defaulted. The facts do not support Petitioner's revised constitutional claim here, nor did Petitioner raise this challenge to his MSR term in any state court proceedings.

Petitioner explains that he was unable to raise this claim in state court proceedings because the state courts "refused to hear the claim[] on [its] merits" and *Carroll* was not decided until 2012.  (Reply at 9.)  But *Carroll*, a decision of a federal district judge (ultimately adverse to Petitioner here) could not have established any new constitutional principle which would constitute "cause" for Petitioner's procedural default.  *Cf. Reed v. Ross*, 468 U.S. 1, 15-17 (1984) (holding that a novel constitutional claim may satisfy "cause" prong where the claim's "legal basis is not reasonably available to counsel," such as where the Supreme Court

expressly overrules prior precedent, overturns a practice approved of by most lower courts, or invalidates practice implicitly sanctioned by the Supreme Court in past cases).

**B.    Claim 6:   Protected Liberty Interest in Good Time Credits**

Petitioner asks this court to direct the IDOC Director to award him 180 days of "good time" credits.  Petitioner contends he has a protected liberty interest in these credits under an earlier version of ILL. ADMIN. CODE tit. 20, § 107.210.   (Reply at 5 (citing § 107.210(b), (c) effective May 5, 1996); *see* 20 Ill. Reg. 6745 (May 17, 1996)).   Petitioner has no protected liberty interest in the possibility of receiving good time credits, however, so his claim is not cognizable under the due process clause. *See Hadley v. Holmes*, 341 F.3d 661, 665 (7th Cir. 2003) (reasoning that petitioner did not have a protected liberty interest in discretionary good time credits awarded under 730 ILCS 5/3-6-3(a)(3), and concluding that "the state need not afford him due process before declining to award him the credit").  Because Petitioner's claim does not implicate the due process clause, it is not cognizable even as a stand-alone claim under 42 U.S.C. § 1983.   Furthermore, because Petitioner's claim does not challenge the validity of his sentence or conviction, it is not cognizable on habeas.

Under the relevant Illinois statute, 730 ILCS 5/3-6-3(a), Illinois prisoners may receive two types of good time credits, only one of which is mandatory.  Section 2.1 requires the award of good time credits for time served to certain offenders, while section 3 authorizes the IDOC Director, in his discretion, to award up to 180 days of "additional sentence credit for good conduct."   *Id.* § 5/3-6-3(a)(2.1).   Petitioner cites *Montgomery v. Anderson,* 262 F.3d 641, 645 (7th Cir. 2001), in which the Seventh Circuit held that an Indiana petitioner had a protected liberty interest in receiving good time credits because that state's statute provided that he would receive the credit unless certain findings were made.   By contrast, in Illinois, the award of supplemental good time credits is completely at the discretion of the Director.   Nor did the recent amendment to § 107.210, which governs the award of supplemental good time credits, change things.   Even at the time of Petitioner's sentencing in 2009, the Director had sole

discretion to award up to 180 days of "meritorious good time."  20 Ill. Reg. 6745; *see* ILL. ADMIN. CODE tit. 20, § § 107.210.  Thus, while Petitioner may have a protected liberty interest in credits for time served (730 ILCS 5/3-6-3(a)(2.1)), he has no protected liberty interest in the possible award of good time credits at the discretion of the IDOC Director.  *Id.* § 5/3-6-3(a)(3). Without a protected liberty interest, the Director's decision not to award Petitioner any supplemental service credit need not comply with any due process requirements, and denial of good time does not raise a cognizable federal claim.

Petitioner also alleges that the amendment to § 107.201 as applied to him violates the *Ex Post Facto* Clause, Art. I, § 10, cl. 1.  That Clause prohibits states from passing penal statutes that apply retroactively to "disadvantage the offender affected by them" by, for example, increasing penalties or criminalizing previously legal conduct.  *Collins v. Youngblood*, 497 U.S. 37, 41-42 (1990).  In the prison context, "[o]nly prison regulations that are both retroactive and punitive fall within the purview of the Ex Post Facto Clause."  *Kindred v. Vannatta*, 21 F. App'x 461, 463 (7th Cir. 2001).  The amendment to § 107.201 was neither; it applies to Petitioner's ability to earn supplemental good time credits in the future, and did not increase his underlying sentence.

Finally, Petitioner urges that, as applied to him, the amendment to § 107.201 violates the constitutional principle of separation of powers and the Fourteenth Amendment's Equal Protection clause.  (Reply at 6-7.)  Neither claim is compelling.  Petitioner fails to explain or cite any case law to support his separation of powers claim (*id.*), and this court will not speculate as to the basis of the bare allegation.  Petitioner's equal protection claim appears to be, primarily, a complaint about the amount of supplemental good time credits that the Director has awarded since the amendment was enacted on February 1, 2013.  According to Petitioner, before the amendment took effect, prisoners received supplemental good time credits more regularly, and Petitioner urges that he is being treated differently than those who received good time credits before the amendment was enacted.  (*Id.* at 6.)  This is not a classification that gives rise to

33

equal protection concerns, however; it is the mere consequence of a regulatory amendment. Petitioner does not allege that he is part of a class of persons who receive different treatment, but rather complains that all prisoners are now subject to the purportedly more stringent standards for supplemental good time credits than the standards applied prior to the amendment. Again, as Petitioner has no protected liberty interest in the good time credits, his claim is not cognizable either as a stand-alone due process or equal protection claim under § 1983. *See Hadley*, 341 F.3d at 665 (rejecting petitioner's habeas challenge to the DOC's application of a state court decision that limited the provision of good time credits; DOC's action did not violate equal protection because it applies to all prisoners). And, significantly, like his due process challenge, Petitioner's complaint about the way in which good time credits are administered does not challenge his original conviction or sentence, and therefore, does not provide a basis for habeas relief.

Petitioner also alleges that he is being treated differently than other prisoners who have received supplemental good time credit as the Director has not awarded him supplemental good time credit despite his eligibility. (Reply at 7.) By citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), Petitioner implies that he is being arbitrarily singled out as a "class of one" in violation of the equal protection clause. (Resp. to Answer at 7 (citing. *Olech*, 528 U.S. at 564).) Petitioner has offered no basis for the conclusion that the Director intentionally and arbitrarily singled him out for adverse treatment, however. *Compare Olech*, 528 U.S. at 565 (allegation that defendant intentionally imposed "irrational and wholly arbitrary" requirement of a longer easement to connect plaintiff to water supply than other similarly-situated homeowners sufficient to state a "class of one" equal protection challenge). Petitioner has not shown the application of the amendment to § 107.210 is unconstitutional. And, more relevant to this court's analysis, Petitioner's complaint about the Director's administration of good time credits does not challenge the constitutionality of his conviction or sentence, and therefore, is not a cognizable habeas claim.

34

**CONCLUSION**

Because Petitioner failed to exhaust any of the grounds for relief identified in his habeas petition, and has no available state proceedings as of right in which to exhaust these claims, his *Brady* claim, ineffective assistance of counsel claim, and sentencing challenge are procedurally defaulted. His bail challenge is moot, and the sentencing challenge presents only a state law issue. Finally, his claims regarding mandatory supervised release, denial of good time credits, and medical treatment are not appropriate for federal habeas review. As such, Petitioner's Habeas Petition [1] is denied. The court concludes that reasonable jurists would not find these conclusions debatable and therefore declines to issue a certificate of appealability.

ENTER:

Dated: March 3, 2014

_____

REBECCA R. PALLMEYER
United States District Judge